MARLENA A. GOL,

                **Plaintiff,**

-vs-                                          **Case No. 6:08-cv-1438-Orl-GJK**

COMMISSIONER OF SOCIAL
SECURITY,

                **Defendant.**
_____

## MEMORANDUM OF DECISION

Marlena A. Gol (the "Claimant"), appeals to the district court from a final decision of the Commissioner of Social Security (the "Commissioner") denying her application for benefits. *See* Doc. No. 1. Claimant maintains that the Commissioner's final decision should be reversed and remanded because the Administrative Law Judge failed to properly determine her credibility and because the Appeals Council erred by denying review given her newly diagnosed cancer. For the reasons set forth below, it is ordered that the Commissioner's decision is **REVERSED AND REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) because the reasons for discrediting Claimant's credibility in the Administrative Law Judge's decision are not supported by substantial evidence**.

## I.    <u>BACKGROUND</u>

Claimant was born on October 8, 1958, and she completed high school as well as some college. R. 743-44. Claimant's past employment experience includes working as teacher, substitute teacher, sales associate, greeter, jewelry sales person, and working for a public

relations firm.  R. 81.  Claimant has not worked since October 31, 2002.  R. 393.  On October 9, 2003, Claimant filed an application for a period of disability and disability insurance benefits alleging an onset of disability as of October 31, 2002.  R. 66-68.  Claimant alleges disability due to fibromyalgia, anxiety, and depression.  R. 80. Claimant last date insured is March 31, 2006, and, therefore, Claimant must establish disability on or before that date.

## II.  RELEVANT MEDICAL RECORD

The record shows that Claimant was frequently treated for a variety of ailments at the Brevard Health Alliance from March 17, 2004 through July 18, 2007, the date of the last hearing before an Administrative Law Judge.  R. 275-351, 359-94, 473-80, 498-538, 738.  On April 27, 2004, Dr. Nageh Barsoum, M.D.'s physical examination of Claimant showed tender trigger points at the neck, trapezius, upper chest and elbows.  R. 339.  Dr. Barsoum notes show that fibromyalgia and anxiety "account for all [of Claimant's] symptoms."  R. 339.  Thus, Dr. Barsoum diagnosed Claimant with fibromyalgia.  R. 335, 339.  On December 16, 2004, Dr. Barsoum's notes reveal that Claimant's fibromyalgia was deteriorating.  R. 316.  Claimant appeared to be in pain when moving.  R. 315.  Claimant complained of worsening muscle, joint, and knee pain.  R. 315.  Claimant was treated with medications.[1]

On July 14, 2005, Claimant presented in no acute distress and her depression, panic attacks, and anxiety were noted as improved, but her fibromyalgia remained unchanged.  R. 280. On July 19, 2005, Claimant presented to Brevard Health Alliance complaining of pain all over and anxiety.  R. 277.  Claimant appeared to be in moderate distress.  R. 277.  Dr. Thomas L. Garvin, M.D. noted "multiple sites of tenderness."  R. 277.  Arthrotec was prescribed, but

---

[1] Claimant was treated with a variety of medications for her various ailments, but Brevard Health Alliance's records do not indicate which medications were prescribed for which ailments.

Claimant stated that she could not afford it. R. 278. Claimant was instructed to return in one week. R. 278. On August 17, 2005, Claimant returned still complaining of pain in multiple areas. R. 387. On September 14, 2005, Claimant continued to complain of pain in multiple areas and fatigue. R. 385. Multiple trigger points on her back were tender. R. 385. Dr. Garvin added chronic fatigue syndrome to Claimant's symptoms. R. 386. On October 12, 2005, Dr. Garvin opined that Claimant's symptoms were consistent with fibromyalgia and chronic fatigue syndrome. R. 379. On November 30, 2005, Dr. Garvin's notes show that Claimant's fibromyalgia was deteriorating. R. 373. On February 6, 2006, Claimant's fibromyalgia was unchanged. R. 531.

On June 5, 2006, Claimant presented still experiencing pain. R. 512. Dr. Garvin prescribed physical therapy and treatment. R. 513. Claimant received physical therapy for fibromyalgia and chronic fatigue syndrome at Health First Rehabilitation from June 26, 2006 through August 10, 2006. R. 465-72. Five physical therapy sessions were completed from June 26 to July 27, 2006. R. 467. On July 27, 2006, the physical therapist's notes state that Claimant was complaining of increased left knee pain and stating that it is now in constant pain. R. 467. The note also provides that Claimant reported difficulty with light activities and even with exercises in an aquatic environment. R. 467. The objective findings state that Claimant has increased pain in the left knee. R. 467. The note also states: "The patient does not tolerate exercises well in the pool or on land. She is not good candidate to continue with physical therapy." R. 467. On July 27, 2006, Claimant also presented to Dr. Garvin for a follow-up appointment. R. 507. Dr. Garvin's records show that Claimant continued to be diagnosed with fibromyalgia, and a diagnosis of chronic fatigue syndrome was added. R. 507.

On August 10, 2006, physical therapy was discontinued. R. 465. The final note provides that Claimant "continued to have pain and did not tolerate exercises either on land or in the water very well." R. 465. Claimant was instructed on using a TENS unit with fair to good results. R. 465. The note states that the reason for discharge is because therapy made "[l]ittle progress in symptoms." R. 465. On August 28, 2006, Claimant's physical examination showed limited range of motion in all directions and trigger point tenderness over the C-spine. R. 505. An MRI of the cervical spine was unremarkable. R. 503. Neither Dr. Barsoum nor Dr. Garvin offered an opinion as to Claimant's functional limitations.

The record shows that the Claimant was treated a Circles of Care for psychiatric interviews and examinations from July 27, 2004 through August 29, 2006. R. 266-74, 458-64. On July 27, 2004, Dr. Librada Porciuncula, M.D., diagnosed Claimant with Dysthymic Disorder and chronic Post Traumatic Stress Syndrome ("PTSD"). R. 274. Claimant was assigned a GAF score of 60. R. 274. Mental status examination showed Claimant was alert and fully orientated and demonstrated: coherent speech; goal directed thinking, "quite sad and depressed"; no suicidal or homicidal ideation; above average intellect; and fair insight and judgment. R. 273. Claimant was continued on Xanax 0.5mg and Lexapro 10mg daily, and sent to group therapy sessions. R. 274. On August 25, 2004, Claimant presented to Circles of Care crying and reported that Xanax and Lexapro were not helping. R. 271. Claimant reported problems with her memory and stated she no longer wanted to take the medications. R. 271. Dr. Manuel Meza, M.D.'s mental status examination revealed that the Claimant was cooperative, very anxious, worried, and tearful. R. 271. Claimant's speech was low but goal directed. R. 271. Dr. Meza stated that Claimant was "[p]reoccupied with somatic pain, complaints." R. 271. Claimant's

diagnosis remained unchanged and her medications were changed to Klonopin .05mg twice daily and Effexor 37.5mg in the morning.  R. 271.

On September 14, 2004, Dr. R.V. Radin, M.D. recommended that Claimant continue taking Xanax and added Paxil CR 25mg in the morning.  R. 270.  On October 19, 2004, Claimant reported that Paxil made her very drowsy, but Xanax was helping.  R. 269.  Claimant's diagnosis remained unchanged, but Dr. Radin's mental status examination showed "[n]o evidence for undue anxiety or depression."  R. 269.  Paxil was reduced to 10mg once in the morning. R. 269.  On November 16, 2004, Dr. Radin's mental status examination showed "no evidence of severe depression," but moderate anxiety.  R. 268.  Diagnosis remained the same, but Fluoxetine 20mg and Trazodone 100mg were added to her medication regimen.  R. 268.  On December 14, 2004, Claimant reported that she was having difficulty with her fibromyalgia.  R. 267. Dr. Radin's mental status examination showed moderate depression and anxiety.  R. 267. Wellbutrin 75mg was added to Claimant's medication regimen.  R. 267.

On March 3, 2005, Dr. Radin's mental status examination showed no evidence of severe depression, and only slight anxiety.  R. 464.  On April 7, 2005, Dr. Radin's notes show that Claimant's anxiety was moderate, and on August 18, 2005, Claimant's depression was moderate. R. 462-63.  Claimant's diagnosis and mental status examinations are largely similar from August 18, 2005 through August 29, 2006.  R. 458-62.  Claimant's treating psychiatrists did not offer an opinion as to the functional limitations imposed by Claimant's mental impairments.

III.     **OPINION EVIDENCE**

1.  **Physical Consultative Examination**

On February 27, 2004, Claimant presented to Dr. John Spencer C. Archinihu for a

physical consultative examination. R. 220-23. Dr. Archinihu also reviewed an unremarkable June 2003 stress test record from the Vero Beach Health Department. R. 220. Dr. Archinihu's notes show that Claimant reported she is able to take care of her normal daily activities. R. 221. Dr. Archinihu's physical examination was unremarkable. R. 221-222. Claimant's extremities, musculoskeletal system, and motor functions were normal. R. 222. Dr. Archinihu opined that Claimant can sit for eight hours, walk for two miles, and lift twenty pounds. R. 222. However, Dr. Archinihu recommended a consultation with a Psychiatrist and Rheumatologist to determine the extent of Claimant's functional limitations and noted that Claimant's physical limitations are mild. R. 222.

### 2. Physical RFC

On August 16, 2004, Dr. Donald Warren Morford, M.D., a non-examining state agency consultant provided a physical residual functional capacity ("RFC") evaluation based on a records review. R. 242-49. Dr. Morford opined Claimant suffers from a primary diagnosis of fibromyalgia and that Claimant can: occasionally lift a maximum of twenty pounds and frequently lift a maximum of ten pounds; stand and/or walk for about six hours in an eight hour workday; sit for about six hours in an eight hour workday; and push or pull unlimitedly. R. 243. Dr. Morford based his opinion on Dr Archinihu's report and a June 2004 treatment record showing Claimant was being treated for sinusitis. R. 243. Dr. Morford further opined that Claimant has occasional postural limitations in climbing, balancing, stooping, kneeling, crouching, and crawling. R. 244. Dr. Morford opined that Claimant's impairments result in no manipulative, visual or communicative limitations. R. 243-46. Dr. Morford also opined that Claimant should avoid concentrated exposure to extreme heat, cold, fumes, and hazards. R. 246.

Dr. Morford concluded that Claimant's symptoms and complaints exceed the objective findings in the medical record. R. 247.

### 3. Consultative Psychiatric Evaluation

On February 13, 2004, Claimant presented to Dr. Robert Jack Eardley, M.D. for a consultative psychiatric evaluation. R. 216-19. Claimant's mental status examination revealed that she appeared forgetful, she was friendly, cooperative, and her speech was relevant and coherent. R. 218. Dr. Eardley opined that "[h]er mood and affect suggest clinical depression." R. 218. No hallucinations were present and Claimant was oriented, but displayed questionable memory. R. 218. Dr. Eardley diagnosed major depression. R. 219. As to her prognosis, Dr. Eardley stated that "[t]he probable durations of this [C]laimant's issues relates to her many physical complaints." R. 219. Dr. Eardley also stated that Claimant is having difficulty making personal and social adjustments. R. 219. Finally, he concluded that although she could be capable, her ability to manage her funds remains open to question. R. 219.

### 4. PRT and MRFC

On March 8, 2004, Dr. Alejandro Evergara, M.D., a non-examining state agency consultant, completed a Psychiatric Review Technique ("PRT") and a mental residual functional capacity evaluation ("MRFC") based on a records review. R. 224-41. Dr. Evergara determined that Claimant suffers from an affective disorder and an anxiety related disorder. R. 224. He opined that the affective disorder is characterized by major depression, single episode, not psychotic. R. 227. He also opined that Claimant has anxiety disorder not otherwise specified. R. 229. Dr. Evergara concluded that these impairments result in mild restriction of activities of daily living, mild difficulties in maintaining social functioning, moderate difficulties in

maintaining concentration, persistence, or pace, and no episodes of decompensation. R. 234. Dr. Evergara based his conclusions on Dr. Eardley's consultative examination. R. 236.

In the MRFC, Dr. Evergara opined that Claimant is moderately limited in the ability to: carry out detailed instructions; maintain attention and concentration for extended periods; complete a normal workday and workweek without interruptions from psychologically based symptoms; and to interact appropriately with the general public. R. 238-39. In all other areas, Dr. Evergara opined that Claimant was not significantly limited or there was no evidence to support a finding in that area. R. 238-39. In the conclusion section, Dr. Evergara stated:

> Claimant does not have a history of mental health treatment or [psychiatric hospitalization]. Takes psychotropic [medications] from Health Department Clinic. She may experience difficulty carrying out detailed instructions and maintaining concentration for sustained periods of time. Also she may have difficulty interacting/socializing with general public. Her [activities of daily living] however are not significantly impaired or limited, and she appears to be capable of doing simple tasks and assignments.

R. 240.

On October 4, 2004, Dr. Steven L. Wise, a clinical psychologist, completed a PRT and MRFC. R. 250-65. Dr. Wise opined that Claimant suffers from an affective disorder and anxiety related disorder. R. 250. He opined that the affective disorder is characterized by dysthymia and the anxiety related disorder is characterized by PTSD. R. 253, 255. Dr. Wise concluded that Claimant's mental impairments result in the same degree of limitation as set forth in Dr. Evergara's PRT. R. 234, 260. Dr. Wise based his conclusions on Dr. Eardley's consultative examination and two treatment records from Circles of Care. R. 262.

In Dr. Wise's MRFC, he opined that Claimant was moderately limited in the ability to: maintain attention and concentration for extended periods; and to complete a normal workday

and workweek without interruptions from psychologically based symptoms.  R. 263-64.  In all

other areas, Dr. Wise opined that Claimant was not significantly limited.  R. 263-64.  In the

conclusion section, Dr. Wise stated:

> Claimant has a history of depression and panic disorder W/O
> AG/PTSD.  Despite these issues, her [mental status examination]
> remains fairly good and she is receiving appropriate treatment.
> Still, she evidences reduced concentration and her pace and
> persistence are negatively impacted by her mental issues.
> Claimant appears to retain the mental capacity to perform simple
> tasks and maintain adequate relations for goal directed activity.

R. 264.

## IV.    PROCEEDINGS BELOW

Claimant's application was denied initially and upon reconsideration.  R. 39-43, 50-52.

Thereafter, Claimant requested a hearing before an Administrative Law Judge. R. 53.   On

January 25, 2006, an initial hearing was held before Administrative Law Judge Jimmy Coffman

(the "ALJ") who, on May 1, 2006, issued a decision finding Claimant not disabled.  R. 398-403,

699-714.  On June 1, 2006, Claimant filed a request for review with the Appeals Council.  R.

404.  On June 30, 2006, the Appeals Council remanded the case to the ALJ for a new hearing.

R. 409-13.  The order on remand from the Appeals Council states the ALJ should:

> Give further consideration to the [C]laimant's maximum residual
> functional capacity during the entire period at issue and provide
> rationale with specific references to evidence of record in support
> of assessed limitations.   In so doing, evaluate the treating and
> examining source opinion pursuant to the provisions of 20 CFR
> 404.1527 and Social Security Rulings 96-2p and 96-5p and
> nonexamining source opinion in accordance with the provisions of
> 20 CFR 404.1527(f) and Social Security Rule 96-6p, and explain
> the weight given to such opinion evidence. . . .

R. 412.  On October 24, 2006 a second hearing was held before ALJ Coffman.  R. 715-37.  On

December 11, 2006, the ALJ issued a second decision finding Claimant not disabled. R. 546-51.

On March 15, 2007, the Appeals Council remanded the case to the ALJ for a new hearing. R. 556-57. The order on remand from the Appeals Council states the ALJ should: "Give further consideration to the [C]laimant's maximum residual functional capacity and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations." R. 556.

On July 18, 2007, a hearing was held before ALJ Philemina M. Jones. R. 738-60. Claimant waived her right to be represented by counsel at the hearing. R. 740-41. The Claimant, her husband, and vocational expert Natalie Leisari (the "VE") testified at the hearing. R. 738-60.

On August 16, 2007, ALJ Jones issued a decision that Claimant was not disabled. R. 25-33. ALJ Jones made the following significant findings:

1. The Claimant last met the insured status requirement of the Social Security Act on March 31, 2006;

2. The Claimant has not engaged in substantial gainful activity since October 31, 2002, the alleged onset date;

3. The Claimant has the following severe combination of impairments: fibromyalgia, anxiety, and major depression, single episode;

4. The Claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments;

5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, and despite some functional limitations and associated pain symptoms, the Claimant has the residual functional capacity to perform the sedentary to light exertional demands of other occupations, which include the ability to lift/carry 10 pounds to stand/walk for 2 hours in an 8 hour day, and sit for about six hours in an 8 hour day. She can occasionally climb, balance, stoop, kneel, crouch, and crawl in an 8-hour workday. She should avoid concentrated exposure to extreme cold, heat, fumes, odors, dusts, gases, poor ventilation and hazards. From a mental standpoint, the Claimant had

only mild restriction of activities of daily living, mild difficulties maintaining social functioning, moderate difficulties in maintaining concentration, persistence, or pace, with the ability to perform simple, repetitive tasks and assignments due to affective and anxiety disorder;

6.  Through the date last insured, the Claimant was unable to perform past relevant work;

7.  The Claimant was born on October 8, 1958 and was 47 years old, which is defined as a younger individual age 18-49, on the date last insured;

8.  The Claimant has at least a high school education and is able to communicate in English;

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the Claimant is "not disabled," whether or not the Claimant has transferable job skills;

10. Through the date last insured, Considering the Claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the Claimant could have performed.

*Id.* The ALJ states in her decision that "[i]t is clear that there is no evidence of a totally disabling, severe medically determinable impairment, or combination of impairment." R. 31. No weight is afforded to any of the medical or opinion evidence in the record. R. 25-33.[2] The ALJ's decision states repeatedly, in conclusory fashion, that the ALJ has carefully considered the medical evidence of record. *See* R. 27-31.[3]

Regarding the Claimant's credibility, ALJ Jones states:

> The undersigned also considered the controlling case law in the Eleventh Circuit regarding the standard used to assess subjective complaints of pain. This standard requires evidence of an underlying medical condition and either objective medical evidence that confirms the severity of the alleged pain arising from that condition or that the objectively determined medical condition

---

[2] The ALJ's decision does not mention or discuss, in any way, a single specific record generated by a treating or examining source. *See* R. 25-33. The only medical evidence the ALJ specifically addresses is the residual functional capacity evaluations ("RFC") and psychiatric review techniques ("PRT") conducted by non-examining state agency medical consultants. *See* R. 25-33.

[3] The Court notes that significant portions of the various ALJ decisions are largely identical. *See* R. 28, 400, 548; R. 30, 401, 550; R. 30, 402, 550; R. 31, 402, 550.

is of such severity that it can reasonably be expected to give rise to the alleged pain. *Brown v. Sullivan*, 921 F.2d 1233 (11th Cir. 1991). This standard also applies to subjective complaints other than pain. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991).

After the Appeals Council Remand Order was issued, the undersigned carefully gave further consideration to the impact of the [C]laimant's physical and mental impairments, to the recorded functional limitations as these relate to any potential work base, to the totality of the medical evidence, and to the testimony at the hearing. After considering the evidence of record, the undersigned finds that the [C]laimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the [C]laimant's statements concerning the intensity, duration and limiting effects of these symptoms are not entirely credible.

At the previous hearing, the [C]laimant testified that she was born on October 8, 1958, and she is now age 48, which is defined at a "younger individual". She has a high school general equivalent (GED) education, and past relevant work experience as a teacher, and salesperson/clerk (jewelry, retail). By her description, these occupations were light in exertional demands (Exh. 9E). She presented complaints of significant functional limitations and of very restricted activities of daily living due to the functional impact of her ailments. As stated, her aliments include fibromyalgia, anxiety, and major depression. She lives with her husband, Mr. Eli Gol, who also testified at the supplemental hearing. She reiterated that she has lost the ability to perform any substantial gainful activity, or to stand, walk, or sit for prolonged periods of time in a regular work setting due to the functional impact of her impairments. The [C]laimant testified in the previous hearing, despite the [C]laimant's allegations regarding a loss of ability to perform substantial gainful activity in a regular work setting, that she was able to do some housework, such as using the vacuum cleaner, she goes out to eat with her husband, and she is able to drive a motor vehicle, albeit only infrequently. At the prior hearing, the [C]laimant's testimony was corroborated by her husband.

At the current hearing, the [C]laimant essentially reiterated her previous assertions that she has lost the ability to perform any substantial gainful activity. She went part-time to college and did not finish, but has a high school general equivalent (GED)

diploma.  She does not drive at this time, and she drove one time long distance and 3 times short distances during [the] period in question.   She has no restrictions on her driver's license.   In explaining her past relevant work, the [C]laimant reviewed the Work History Report signed and dated by her on November 18, 2003 (Exhibit 9E), and stated that she had a 4 day training to answer the telephone for AOL.com.  Allegedly, she was unable to finish training due to panic attacks and pain.  She worked with a jewelry company, her husband's business, from 2000-2002.  She also worked there part time in 2003, greeting people coming in the door, and also worked at Sam's Club part time for less than one month.   In addition, she worked as a 5th and 6th grade school teacher, but claims she does not remember the year of employment.  Moreover, from August to November 1995, she also worked at a public relations company, putting advertisements in books, and calling people to get adds.   In reconsidering, the [C]laimant stated that she was a teacher in 1994 and 1995, and she has been a teacher at different times.  Furthermore, the [C]laimant conceded in her testimony that she was an Olive Garden bartender from 1991-1993 while attending the university.   Regarding her impairments, the [C]laimant testified that she has no insurance. Allegedly, she has problems with memory, holding things, problems with marriage, cannot hold grandbaby, has problems with her liver, anxiety, gets bad shakes, has broken glasses at home, had a garage door come down on her finger, which swells up bad in the mornings and evenings, but she has no insurance, so no one wants to take her as a patient.  The [C]laimant described experiencing chest pain, and getting out of breath easily.  When she lifts objects, her chest hurts, and she was told it was caused by her fibromyalgia.  Reportedly, she has a bag full of medications that she says she cannot take.    Allegedly, there are other medications that they want to try on her, but she cannot afford to pay for them.  Testimony again was received from Mr. Eli Gol, the [C]laimant's husband.   In corroborating her testimony Mr. Gol testified that the [C]laimant has physical problems, a bad memory, panic attacks, forgets things, and drops things.  He came home one day and found the house full of smoke, because the [C]laimant forgot something on the stove.   Another time she left a candle burning.  She has gone through a box of 24 glasses, and has broken all but one.  She used to cook every day but had to stop.  She tries to label things for him for his work, but she makes mistakes. Allegedly, she is getting panic attacks more frequently since the period in question.

<u>After considering the medical record in its entirety, the undersigned concludes that a finding of disability is not warranted. The [C]laimant's testimony was not entirely persuasive to support a finding of disability. Moreover, the evidence of record does not support the [C]laimant's allegations as to disability. In addition, the [C]laimant's testimony again exaggerated her functional limitations, in relation to the recorded ailments and functional limitations.</u> While it is reasonable to conclude that the [C]laimant should have had some pain and or limitations as a result of the effects of her musculoskeletal ailments and emotional difficulties, the evidence as a whole does not substantiate any cause for such debilitating pain, as described by the [C]laimant, which would preclude all work activity. Moreover, there was no new or material evidence that might justify altering the prior denial decision. The record simply fails to show that the [C]laimant has such a marked diminished range of motion or muscle atrophy as would accompany the alleged disability. To the contrary, the medical evidence supports the conclusion that the [C]laimant has manageable medical difficulties. As previously discussed, in the [RFC] dated August 16, 2004, the reviewing [non-examining] State agency physician noted the [C]laimant's alleged complaints and concluded that, despite the [C]laimant's alleged complaints, she retains the ability to lift/carry 20 pounds, occasionally, 10 pounds frequently, and to stand, walk, or sit for about 6 hours each in an 8-hour workday. The undersigned has further noted that the State agency assessment limited the [C]laimant to occasionally climb, balance, stoop, kneel, crouch, and crawl in an 8-hour worday (Exh. 8-F). This conclusion is consistent with a [RFC] for sedentary to light work exertion, as defined in the regulations and is given more weight.[4] However, in light of the [C]laimant's testimony and the medical records, a more restrictive [RFC] has been given.[5]

As stated, from a mental standpoint, the [C]laimant's complaints of anxiety and depression are unjustified as a basis for disability. Despite [C]laimant's emotional difficulties, on October 4, 2004, the State agency reviewing psychologist completed a [PRT], and the mental [RFC], which revealed that the [C]laimant had only mild to moderate mental functional limitations associated with depression (Dysthymia) and anxiety disorders (Exh. 9F). Moreover, the mental RFC form revealed that the [C]laimant retains the mental capacity to perform simple tasks and maintain

---

[4] It is unclear what opinion the non-examining RFC was given more weight than.
[5] This paragraph is nearly identical to the two prior decisions. R. 30, 401-02, 550.

adequate relations for goal orientated activities (Exhs. 7F and 10F). Although the State Agency physicians and psychologists did not examine the [C]laimant, they provided specific reasons for their opinions about the [RFC] showing that the opinions were grounded in the evidence in the case record including careful consideration of the [C]laimant's allegations about her symptoms and limitations. The undersigned reiterates that the evidence received in the record does not provide any new or material information that would alter any findings about the [C]laimant's [RFC].[6]

The undersigned has carefully considered the medical evidence in its entirety, the arguments presented, as well as the [C]laimant's demeanor and testimony at the hearing. The [C]laimant's testimony is not persuasive with regard to a totally disabling condition prior to her date last insured, March 31, 2006. The medical evidence supports the conclusion that the [C]laimant has manageable medical difficulties. As stated, despite the [C]laimant's musculoskeletal and emotional difficulties, her medical treatment has been conservative and non-aggressive. Moreover, despite her complaints of disabling dysfunction, the [C]laimant was able to attend the hearing proceedings closely and fully, without any noted distractions, or overt pain behavior. She was able to respond to questions appropriately, and she lacked the general physical appearance of a person who might have been experiencing prolonged or severe pain. Significantly, there was no obvious evidence of any significant limiting mental or emotional problem demonstrated during the course of the hearing. She has received adequate medical care and treatment for her conditions. The record contains the reviewing [non-examining] physician's physical and mental [RFC], which are accepted practice for the reviewing State agency physicians to complete the same. The forms contain the [C]laimant's alleged complaints, a brief summary of the [C]laimant's medical history, and a conclusion that is consistent with the objective signs recorded in the medical evidence. Of note, the diagnostic tests and examinations were essentially within normal limits.

It is clear that there is no evidence of a totally disabling, severe medically determinable impairment, or combination of impairment. . . .

---

[6] This paragraph is identical to the prior ALJ's decision, and essentially identical to the first decision. R. 30, 402, 550.

R. 28-31.  Thus, the ALJ found Claimant's subjective testimony less than credible.[7]

After the ALJ's decision, the Claimant requested review by the Appeals Council and submitted additional evidence from her treating physicians regarding a newly diagnosed cancerous mass in her pelvic region.  R. 670-98.  On July 23, 2008, the Appeals Council denied review stating that it had "considered the reasons you disagree with the decision and the additional evidence . . . [but] [w]e found that this information does not provide a basis for changing the [ALJ's] decision."  R. 12-13.  Thus, the ALJ's decision became the final decision of the Commissioner.  R. 12.  On August 20, 2008, Claimant filed an appeal before this Court. Doc. No. 1.

## V.      THE PARTIES' POSITIONS

The Claimant assigns two errors to the Commissioner.  Doc. No. 18.  First, the ALJ erred by failing to follow Social Security Ruling 96-7p when assessing the Claimant's credibility. Doc. No. 18 at 10-12.   More specifically, Claimant maintains that the ALJ erred by failing to provide the reviewing court with a sufficient basis for determining whether substantial evidence supports the ALJ's credibility finding.  *Id.*  Second, Claimant alleges that the Appeals Council erred in denying Claimant's request for review. Doc. No. 18 at 9-10.  Thus, Claimant requests that the Court reverse and remand the case for an award of benefits or, alternatively, to remand the case to the Commissioner.[8]

The Commissioner maintains that substantial evidence supports the ALJ's decision.  Doc. No. 19 at 1-16.   The Commissioner asserts the ALJ properly reviewed the medical evidence,

---

[7] The ALJ's only reference to the medical evidence from treating or examining physicians is from the summaries of said evidence contained within the opinions of the non-examining state agency consults.  *Id.*

[8] Claimant's memorandum also states that she "does not waive her right to oral argument in this case." Doc. No. 18 at 2.   However, Claimant never requested oral argument.

Claimant's subjective allegations, and determined that Claimant's subjective functional limitations were exaggerated. Doc. No. 19 at 13-14. The Commissioner also maintains that the Appeals Council properly denied review. Doc. No. 19 at 5-11. Thus, the Commissioner requests that the final decision be affirmed.

## VI.   <u>LEGAL STANDARDS</u>

### A.   THE ALJ'S FIVE-STEP DISABILITY ANALYSIS

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled. *See* 20 CFR §§ 404.1520(a), 416.920(a). The steps are followed in order. If it is determined that the claimant is or is not disabled at a step of the evaluation process, the evaluation will not go on to the next step.

At step one, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 CFR §§ 404.1520(b), 416.920(b). Substantial gainful activity ("SGA") is defined as work activity that is both substantial and gainful. "Substantial work activity" is work activity that involves performing significant physical or mental activities. 20 CFR §§ 404.1572(a), 416.972(a). "Gainful work activity" is work that is usually performed for pay or profit, whether or not a profit is realized. 20 CFR §§ 404.1572(b), 416.972(b). Generally, if an individual has earnings from employment or self-employment above a specific level set out in the regulations, it is presumed that he has demonstrated the ability to engage in SGA. 20 CFR §§ 404.1574, 404.1575, 416.974, 416.975. If an individual is not engaging in SGA, the analysis proceeds to the second step.

At step two, the ALJ must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe." 20 CFR §§ 404.1520(c), 416.920(c). An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. 20 CFR § 404.1521. An impairment or combination of impairments is "not severe" when medical or other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. 20 CFR §§ 404.1521, 416.921.

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). The ALJ must evaluate a disability claimant as a whole person, and not in the abstract as having several hypothetical and isolated illnesses. *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993). Accordingly, the ALJ must make it clear to the reviewing court that the ALJ has considered all alleged impairments, both individually and in combination, and must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. *See Jamison v. Bowen*, 814 F.2d 585, 588-89 (11th Cir. 1987); *Davis*, 985 F.2d at 534. A mere diagnosis is insufficient to establish that an impairment is severe. *See Sellers v. Barnhart*, 246 F.Supp.2d 1201, 1211 (M.D. Ala. 2002) (citing *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986)). A claimant has the burden of proof to provide substantial evidence establishing that a physical or mental impairment has more than a minimal effect on a claimant's ability to perform basic work

activities. *See Bridges v. Bowen*, 815 F.2d 622, 625-26 (11th Cir. 1987). However, a remand is required where the record contains a diagnosis of a severe condition that the ALJ failed to consider properly. *Vega v. Comm'r*, 265 F.3d 1214, 1219 (11th Cir. 2001). If the claimant does not have a severe medically determinable impairment or combination of impairments, he is not disabled. If the claimant has a severe impairment or combination of impairments, the analysis proceeds to the third step.

At step three, it must be determined whether the claimant's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (the "Listing(s)"). 20 CFR §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926. If the claimant's impairment or combination of impairments meets or medically equals the criteria of a Listing and meets the duration requirement (20 CFR §§ 404.1509, 416.909), the claimant is disabled. If it does not, the analysis proceeds to the next step.

Before considering step four of the sequential evaluation process, the ALJ must first determine the claimant's RFC. 20 CFR §§ 404.1520(e), 416.920(e). An individual's RFC is his ability to do physical and mental work activities on a sustained basis despite limitations secondary to his established impairments. In making this finding, the ALJ must consider all of the claimant's impairments, including those that may not be severe. 20 CFR §§ 404.1520(e), 404.1545, 416.920(e), 416.945.

Next, the ALJ must determine step four, whether the claimant has the RFC to perform the requirements of his past relevant work. 20 CFR §§ 404.1520(f), 416.920(f); *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997). The ALJ makes this determination by considering the

claimant's ability to lift weight, sit, stand, push, and pull. *See* 20 C.F.R. § 404.1545(b). The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). If the claimant is unable to establish an impairment that meets the Listings, the claimant must prove an inability to perform the claimant's past relevant work. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999). The term past relevant work means work performed (either as the claimant actually performed it or as it is generally performed in the national economy) within the last 15 years or 15 years prior to the date that disability must be established. In addition, the work must have lasted long enough for the claimant to learn to do the job and have been SGA. 20 CFR §§ 404.1560(b), 404.1565, 416.960(b), 416.965. If the claimant has the RFC to do his past relevant work, the claimant is not disabled. If the claimant is unable to do any past relevant work, the analysis proceeds to the fifth and final step.

At the last step of the sequential evaluation process (20 CFR §§ 404.1520(g), 416.920(g)), the ALJ must determine whether the claimant is able to do any other work considering his RFC, age, education and work experience. In determining the physical exertional requirements of work available in the national economy, jobs are classified as sedentary, light, medium, heavy, and very heavy. 20 CFR § 404.1567. If the claimant is able to do other work, he is not disabled. If the claimant is not able to do other work and his impairment meets the duration requirement, he is disabled. Although the claimant generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Social Security Administration. In order to support a finding that an individual is not disabled at this step, the Social Security Administration is responsible for

providing evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do, given the RFC, age, education and work experience. 20 CFR §§ 404.1512(g), 404.1560(c), 416.912(g), 416.960(c).

### B.    THE STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla —  i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (*citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *accord*, *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  *Foote*, 67 F.3d at 1560; *accord*, *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings); *Parker v. Bowen*, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

Congress has empowered the district court to reverse the decision of the Commissioner without remanding the cause.  42 U.S.C. § 405(g)(Sentence Four).  To remand under sentence

four, the district court must either find that the Commissioner's decision applied the incorrect law, fails to provide the court with sufficient reasoning to determine whether the proper law was applied, or is not supported by substantial evidence.  *Keeton v. Dep't of Health & Human Serv.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (reversal and remand appropriate where ALJ failed to apply correct law or the ALJ failed to provide sufficient reasoning to determine where proper legal analysis was conducted) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1146 (11th Cir. 1991); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990));  *Jackson v. Chater*, 99 F.3d 1086, 1090-91 (11th Cir. 1996) (remand appropriate where ALJ failed to develop a full and fair record of claimant's RFC); *accord Brenem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

This Court may reverse the decision of the Commissioner and order an award of disability benefits where the Commissioner has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt.  *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993); *accord*, *Bowen v. Heckler*, 748 F.2d 629, 631, 636-37 (11th Cir. 1984).  A claimant may be entitled to an immediate award of benefits where the claimant has suffered an injustice, *Walden v. Schweiker*, 672 F.2d 835, 840 (11th Cir. 1982), or where the ALJ has erred and the record lacks substantial evidence supporting the conclusion of no disability, *Spencer v. Heckler*, 765 F.2d 1090, 1094 (11th Cir. 1985). The district court may remand a case to the Commissioner for a rehearing under sentences four or six of 42 U.S.C. § 405(g); or under both sentences.  *Jackson*, 99 F.3d at 1089-92, 1095, 1098.  Where the district court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be

appropriate to allow the Commissioner to explain the basis for his decision. *Falcon v. Heckler*, 732 F.2d 827, 829 - 30 (11th Cir. 1984) (remand was appropriate to allow ALJ to explain his basis for determining that claimant's depression did not significantly affect her ability to work).[9]

## VII.   ANALYSIS

### A.  Credibility

Claimant alleges that the ALJ erred by failing to follow Social Security Ruling 96-7p. Doc. No. 18 at 10-12.  In the Eleventh Circuit, subjective complaints of pain are governed by a three-part "pain standard" that applies when a claimant attempts to establish disability through subjective symptoms.  By this standard, there must be: 1) evidence of an underlying medical condition and either 2) objective medical evidence that confirms the severity of the alleged symptom arising from the condition or 3) evidence that the objectively determined medical condition is of such severity that it can be reasonably expected to give rise to the alleged pain. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (citing *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986)).[10]   "20 C.F.R. § 404.1529 provides that once such an impairment is established, all evidence about the intensity, persistence, and functionally limiting effects of pain or other symptoms must be considered in addition to the medical signs and laboratory findings in deciding the issue of disability." *Foote*, 67 F.3d at 1561 (emphasis added); 20 C.F.R. §

---

[9] On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence.  *Diorio v. Heckler*, 721 F.2d 726, 729 (11th Cir. 1983) (on remand ALJ required to consider psychiatric report tendered to Appeals Council); *Reeves v. Heckler*, 734 F.2d 519, 522 n.1 (11th Cir. 1984) (on remand ALJ required to consider the need for orthopedic evaluation).  After a sentence-four remand, the district court enters a final and appealable judgment immediately, and then loses jurisdiction.  *Jackson*, 99 F.3d at 1089, 1095.

[10] "Medical history and objective medical evidence such as evidence of muscle atrophy, reduced joint motion, muscle spasm, sensory and motor disruption, are usually reliable indicators from which to draw reasonable conclusion about the intensity and persistence of pain and the effect such pain may have on the individual's work capacity." Social Security Ruling 88-13.

404.1529.[11] Thus once the pain standard is satisfied, the issue becomes one of credibility.

A claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability. *Foote*, 67 F.3d at 1561. "If the ALJ decides not to credit a claimant's testimony as to her pain, he must articulate explicit and adequate reasons for doing so." *Id.* at 1561-62. A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. *Id.* at 1562. The failure of the ALJ to articulate the reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true. *Id.* The lack of a sufficiently explicit credibility finding may give grounds for a remand if the credibility is critical to the outcome of the case. *Id.* If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." *Foote*, 67 F.3d at 1562 (*quoting Tieniber v. Heckler*, 720 F.2d 1251, 1255 (11th Cir. 1983) (although no explicit finding as to credibility is required, the implication must be obvious to the

---

[11] Social Security Ruling 96-7p provides: "2. When the existence of a medically determinable physical or mental impairment(s) that could reasonably be expected to produce the symptoms has been established, the intensity, persistence, and functionally limiting effects of the symptoms must be evaluated to determine the extent to which the symptoms affect the individual's ability to do basic work activities. This requires the adjudicator to make a finding about the credibility of the individual's statements about the symptom(s) and its functional effects.
3. Because symptoms, such as pain, sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, the adjudicator must carefully consider the individual's statements about symptoms with the rest of the relevant evidence in the case record in reaching a conclusion about the credibility of the individual's statements if a disability determination or decision that is fully favorable to the individual cannot be made solely on the basis of objective medical evidence.
4. In determining the credibility of the individual's statements, the adjudicator must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record. An individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence." *Id.* (emphasis added).

reviewing court)). Thus, where credibility is a determinative factor, the ALJ must explicitly discredit the testimony or the implication must be so clear as to amount to a specific credibility finding. *Foote*, 67 F.3d at 1561; 20 C.F.R. § 404.1529. "While an adequate credibility finding need not cite particular phrases or formulations . . . broad findings that [a claimant] lacked credibility and could return to her past work alone are not enough to enable us to conclude that [the ALJ] considered her medical condition as a whole." *Foote*, 67 F.3d at 1562 (internal quotations omitted).

In the present case, the ALJ determined that "the [C]laimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms. . . ." R. 29. Thus, the ALJ found that Claimant's impairments satisfied the pain standard. *Holt*, 921 F.2d at 1223. The ALJ also determined that Claimant's "statements concerning the intensity, duration and limiting effects of these symptoms are not entirely credible." R. 29. Thus, the ALJ made a specific credibility finding that Claimant's subjective statements were not entirely credible. *Foote*, 67 F.3d at 1561. The issue for the Court to determine is whether the ALJ's credibility finding is supported by substantial evidence.

In determining credibility, the ALJ "must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record." SSR-96-7p ¶ 4. The ALJ articulated the following reasons for finding the Claimant's testimony is exaggerated and not credible: 1) the evidence as a whole "does not substantiate <u>any cause</u> for such debilitating pain, as described by the [C]laimant"; 2) the evidence

does not support Claimant's allegations of total disability; 3) Claimant "again exaggerated her functional limitations, in relation to the recorded ailments and functional limitations"; 4) the medical evidence shows the Claimant has "manageable medical difficulties"; 5) the non-examining state agency physicians' opinions contradict Claimant's subjective allegations; and 6) Claimant was able to attend and follow the proceedings "closely and fully, without any noted distractions, or overt pain behavior," "there was no obvious evidence of any significant limiting mental or emotional problem," and Claimant "lacked the general physical appearance of a person who might have been experiencing prolonged or severe pain." R. 30-31 (emphasis added). Although some of the ALJ's stated reasons for finding Claimant not credible overlap, the Court will address each reason below.

### 1. Evidence Shows No Cause For Debilitating Pain

The first reason articulated by the ALJ for discrediting Claimant's subjective statements as to her pain is that the medical record "does not substantiate any cause for such debilitating pain, as described by the [C]laimant, which would preclude all work activity." R. 30 (emphasis added). This finding is plainly contradicted by the ALJ's finding that the Claimant's "medically determinable impairments could reasonably be expected to produce the alleged symptoms. . . ." R. 29. The Claimant's medically determinable impairments are fibromyalgia, anxiety, and major depression. R. 27. As determined by the ALJ, those impairments "could reasonably be expected to produce the alleged symptoms" and, therefore, they are the "cause" of her pain. R. 29-30. Accordingly, the Court finds that the ALJ's first reason for discrediting Claimant's subjective statements is not supported by substantial evidence.

## 2. Evidence Does Not Support Allegations of Total Disability

This finding is problematic because the ALJ has not discussed, weighed, or even cited to a single record from a treating or examining sources, and the ALJ has relied solely on the opinions of the non-examining state agency consultants. The ALJ states:

> Although the State Agency physicians and psychologists did not examine the [C]laimant, they provided specific reasons for their opinions about the residual functional capacity showing that the opinions were grounded in the evidence in the case record including careful consideration of the [C]laimant's allegations about her symptoms and limitations. . . . The record contains the reviewing physician's physical and mental residual functional capacity assessments, which are the accepted practice for the reviewing State agency physicians to complete the same. The forms contain the [C]laimant's alleged complaints, a brief summary of the [C]laimant's medical history, and a conclusion that is consistent with the objective signs as recorded in the medical evidence.

R. 31. However, it is well settled that the opinions of a non-examining physician do not constitute substantial evidence when standing alone. *Spencer ex rel. Spencer v. Heckler*, 765 F.2d 1090, 1094 (11th Cir. 1985).

Even if the ALJ could rely solely on the opinions of non-examining state agency consultants to conclude that the evidence does not support a finding of disability, in this case, those opinions were approximately three years old at the time of the hearing. In the decision, the ALJ only cites or discusses the March 8, 2004 PRT and MRFC of Dr. Evergara (R. 224-41), the August 16, 2004 RFC of Dr. Morford (R. 242-49), and the October 4, 2004 PRT and MRFC of Dr. Wise (R. 250-65). R. 30-31.[12] Dr. Morford's 2004 records review did not have the benefit of Claimant's records from Brevard Health Alliance, which show: multiple trigger points (R.

---

[12] The ALJ's decision fails to mention or even cite to Dr. Archinihu's February 27, 2004, consultative physical examination (R. 220-23), and Dr. Eardley's February 13, 2004, consultative psychiatric examination (R. 219).

385); chronic fatigue syndrome symptoms (R. 385, 507); Dr. Garvin's opinion regarding fibromyalgia and chronic fatigue syndrome (R. 379); deteriorating fibromyalgia (R. 373); increased pain (R. 512); unsuccessful physical therapy (R. 465-72, 513); and limited range of motion in all directions and trigger point tenderness over the C-spine (R. 505). The non-examining PRTs and MRFCs also did not have the benefit of nearly two years of treatment records from Circles of Care. R. 266-74, 458-64. Thus, the ALJ's reliance on these non-examining opinions to find that the evidence does support the Claimant's allegations of total disability is not supported by substantial evidence. *See also Foote*, 67 F.3d at 1562 (broad findings are insufficient).[13]

### 3. Claimant Exaggerated

The ALJ states that "the [C]laimant <u>again</u> exaggerated her functional limitations, in relation to the recorded ailments and functional limitations." R. 30 (emphasis added). The ALJ also states that the record fails to show that the Claimant has a "marked diminished range of motion or muscle atrophy as would accompany the alleged disability." R. 30. The ALJ concludes this section of the decision by citing to Dr. Morford's August 6, 2004, non-examining RFC. R. 30. Although Dr. Morford did opine that Claimant's symptoms exceed the objective findings as of August 16, 2004, as set forth above, that opinion was based on an incomplete records review. R. 247. The ALJ's decision also fails to mention or distinguish the records from Brevard Health Alliance which show consistent and worsening pain, trigger points, deteriorating

---

[13] The failure of the ALJ to mention the Claimant's more recent medical records is particularly problematic given the Appeals Council's direction to the ALJ to further evaluate Claimant's RFC "and provide appropriate rationale with specific references to evidence in the record in support of the assessed limitations." R. 536. The failure to mention the more recent medical records raises concern about whether the ALJ in fact considered the entire record in assessing Claimant's credibility as she was required to do. *Dyer v. Barnhart*, 359 F.3d 1206, 1210-11 (11th Cir. 2005) ("The credibility determination does not need to cite particular phrases or formulations but it cannot merely be a broad rejection which is not enough to enable [the district court] to conclude that [the ALJ] considered [claimant's] entire medical condition as a whole."). *Id.*

fibromyalgia, a new diagnosis of chronic fatigue syndrome and limited range of motion. R. 373, 379, 385, 465-72, 467, 505, 507.[14]

The Eleventh Circuit, in an unpublished decision, has observed that:

> "[Fibromyalgia's] cause or causes are unknown, there is no cure, and of greatest importance to disability law, its symptoms are entirely subjective. There are no laboratory tests for the presence or severity of fibromyalgia." *Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996). Thus, a treating physician's determination that a patient is disabled due to fibromyalgia is even more valuable because there are no objective signs of severity and the physician must interpret the data for the reader.

*Stewart v. Apfel*, Case No. 99-6132, 2000 U.S. App. Lexis 33214 at *8-9 (11th Cir. Dec. 20, 2000).[15] The Court notes that fibromyalgia "is unique and because of the unavailability of objective clinical tests, it is difficult to determine the severity of the condition and its impact on one's ability to work." *Morrison v. Barnhart*, 278 F.Supp.2d 1331, 1335 (M.D. Fla. 2003). Accordingly, the Court finds that the ALJ's finding that Claimant "again exaggerated" her symptoms is conclusory, and not supported by substantial evidence.[16]

### 4. Manageable Medical Difficulties

Based on the ALJ's sole reliance on non-examining opinions, which are based on an incomplete medical record, the ALJ's conclusory statements regarding the medical record, and the ALJ's failure to discuss any of records of Claimant's treating physicians, the Court finds that

---

[14] The Claimant's medical records do not suggest that she is a malingerer or is otherwise exaggerating her condition and the ALJ did not reference any treating or examining physician's record to support the finding that Claimant exaggerated her symptoms.

[15] In the Eleventh Circuit, unpublished decisions are persuasive but not binding authority.

[16] Although not raised by Claimant, the Eleventh Circuit has held that a remand is required "when an ALJ fails to consider properly a claimant's condition despite evidence in the record of that diagnosis. This holding applies to a claim of [chronic fatigue syndrome] when the claimant submits evidence of a [chronic fatigue syndrome] diagnosis." *Vega v. Commissioner of Social Security*, 265 F.3d 1214, 1219 (11th Cir. 2001). Claimant was clearly diagnosed with chronic fatigue syndrome by her treating physicians at Brevard Health Alliance. R. 465-72, 507.

ALJ's decision to discredit Claimant's subjective statements because she has manageable medical difficulties is not supported by substantial evidence.

### 5.  Claimant's Statements Contradict the Non-Examining Opinions

As set forth above, the non-examining opinions are based on an incomplete record and, given the facts in this case, they do not constitute substantial evidence.

### 6.  Claimant Displayed No Obvious Functional Limitations At Hearing

The ALJ states:

> [D]espite her complaints of disabling dysfunction, the [C]laimant was able to attend the hearing proceedings closely and fully, without any noted distractions, or overt pain behavior.  She was able to respond to questions appropriately, and she lacked the general physical appearance of a person who might have been experiencing prolonged or severe pain.  Significantly, there was no obvious evidence of any significant limiting mental or emotional problem demonstrated during the course of the hearing. . . .

R. 31.  In *Freeman v. Schweiker*, 681 F.2d 727, 731 (11th Cir. 1982), the Eleventh Circuit noted the ALJ made the following observation:

> Aside from a suggestion of some uneasiness, [the claimant's] outward appearance remained essentially the same throughout the hearing. He exhibited no significant observable physical signs which would be related to constant pain, and his ability to get about on a regular basis and otherwise function physically appeared generally unimpeded. He was closely observed throughout the hearing. There was no evidence of frequent and regular usage of strong medication to alleviate pain, and he moved about easily during the hearing.... The Administrative Law Judge believes the claimant has been less than candid during the hearing, has exaggerated his symptoms, and it is noted that when he left the hearing room, he literally sprang up from his chair very easily, showing no signs of pain.

*Id*.  The Eleventh Circuit held that such observations constitute impermissible "sit and squirm" jurisprudence.  *Id*.  "In this approach, an ALJ who is not a medical expert will subjectively arrive

at an index of traits which he expects the claimant to manifest at the hearing. If the claimant falls short of the index, the claim is denied." *Id.* In that case, the Eleventh Circuit concluded that "the core of the ALJ's assessment" was a medical one, that the claimant showed no observable signs of pain. *Id.* Thus, the Eleventh Circuit reversed the ALJ's decision.

In *Norris v. Heckler*, 760 F.2d 1154, 1157-58 (11th Cir. 1985), the Eleventh Circuit clarified its holding in *Freeman*, stating:

> The ALJ based his credibility determination on his observations of Norris at the hearing and his finding of insufficient clinical evidence to document the severity of Norris's pain. The ALJ stated that while closely observing Norris at the hearing, "there were no apparently physical signs which would be related to constant and severe pain. He displayed no significant problem ambulating around the hearing room or sitting throughout the hearing." Norris argues that the ALJ improperly applied the "sit and squirm" test and rejected the medical evidence because the ALJ based his decision, in part, upon his personal observations at the hearing. *Freeman v. Schweiker*, 681 F.2d 727, 731 (11th Cir.1982). We disagree; the ALJ properly considered all the evidence presented. In his order, the ALJ discussed, at length, Norris's medical evidence. In addition to his observations, the ALJ explained that he considered the objective medical evidence and Norris's testimony. In *Freeman*, we did not intend to prohibit an ALJ from considering the claimant's appearance and demeanor during the hearing. Rather, an ALJ must not impose his observations in lieu of a consideration of the medical evidence presented. We do not accept an ALJ's mere reliance on his observation of a claimant during a hearing as the only basis upon which to reject a claimant's reference to pain.

*Id.* at 1157-58. In *Norris*, the Court affirmed finding that the ALJ did not engage in "sit and squirm" jurisprudence because he did not rely solely on his observations, but also properly considered all the evidence. *Id.* Thus, *Norris* holds that an ALJ cannot discredit a Claimant's testimony based solely on the ALJ's observations at the hearing. *Id.*

In the present case, the ALJ offered reasons other than her own observations to discredit Claimant's subjective statements. R. 30-31. However, as set forth above, those reasons are not supported by substantial evidence. While the Court does not conclude, in any way, that the ALJ intended to engage in "sit and squirm" jurisprudence, because her observations at the hearing are the last reason for discrediting the Claimant's testimony, that reason is insufficient standing alone. *Norris*, 760 F.2d at 1158. Moreover, this case is factually distinguishable from *Norris* because here the ALJ did not discuss the objective medical evidence from the treating and examining physicians. *Id*.

## VIII. <u>REMEDY</u>

Claimant requests that the Court reverse the final decision and remand for an award of benefits. Doc. No. 18 at 13. Alternatively, Claimant requests a remand to the ALJ for further proceedings. *Id*.[17] A court may reverse for an award of benefits in two narrow circumstances: 1) where the Commissioner has already considered all the essential evidence and the cumulative effect of the evidence establishes disability without any doubt; and 2) where a claimant has suffered an injustice. *See Davis*, 985 F.2d at 534; *Walden*, 672 F.2d at 849. In this case, the ALJ's decision fails to show that she considered the entire medical record, but, based on the current medical record, the Court cannot say that the Claimant is disabled without any doubt.

The Appeals Council has twice remanded to the ALJ to give further consideration of Claimant's maximum RFC with specific reference to evidence in the record in support of the assessed limitations. R. 412, 556. This is the third time an ALJ has failed to render a decision supported by substantial evidence. Nonetheless, it is not clear that Claimant is disabled beyond

---

[17] Claimant also requests an award of attorneys' fees and costs pursuant to the Equal Access to Justice Act. Doc. No. 18 at 13. However, Plaintiff should file a separate motion for attorneys' fees and costs under the Equal Access to Justice Act.

doubt. Therefore, while this case is approaching the precipice, the Court cannot say that Claimant has suffered an injustice. Accordingly, the case will be remanded to the ALJ for further proceedings. *See Brenem*, 621 F.2d at 690 (remand appropriate where record was insufficient to affirm, but also insufficient to find claimant disabled).

## IX. <u>CONCLUSION</u>

Based on the forgoing reasons, the ALJ's reasons for discrediting Claimant's subjective statements are not supported by substantial evidence.[18] Thus, it is **ORDERED** that the Commissioner's decision is **REVERSED and REMANDED to the ALJ for rehearing pursuant to sentence four of Section 405(g)**. On remand the ALJ should:

1) Consider the entire record;

2) Discuss the records from Claimant's treating and examining physicians;

3) Consider and discuss Claimant's diagnosis of chronic fatigue syndrome and how it impacts Claimant's functional limitations;

4) Attempt to obtain an opinion or statement from Claimant's treating physicians;

5) Consider whether a referral to a rheumatologist would be appropriate; and

6) When weighing the Claimant's credibility, the ALJ must articulate specific reasons supported by substantial evidence for a credibility determination.

Failure to properly address these issues on remand, given the history of this case, may result in an injustice. The Clerk is directed to enter judgment in favor of the Claimant and close the case.

---

[18] Because the ALJ's credibility determination is not supported by substantial evidence, there is no need to consider Claimant's additional arguments.

**DONE** and **ORDERED** in Orlando, Florida on March 11, 2010.


_Greg Kelly_
GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE


The Court Requests that the Clerk
Mail or Deliver Copies of this Order to:

Krista L. Rush
Krista L. Rush, P.A.
10 Suntree Place
Melbourne, FL 32940

Bradley K. Boyd
Bradley K. Boyd, P.A.
Suite D
1310 W, Eau Gallie Blvd
Melbourne, FL 32935

Susan R. Waldron
U.S. Attorney's Office
Suite 3200
400 N. Tampa St.
Tampa, Florida          33602


Mary Ann Sloan, Regional Chief Counsel
Dennis R. Williams, Deputy Regional Chief Counsel
Susan Kelm Story, Branch Chief
Christopher G. Harris, Assistant Regional Counsel
Office of the General Counsel, Region IV
Social Security Administration
61 Forsyth Street, S.W., Suite 20T45
Atlanta, Georgia          30303-8920

The Honorable Philemina M. Jones
Administrative Law Judge
c/o Office of Disability Adjudication and Review
Suite 300
3505 Lake Lynda Dr.
Orlando, Florida          32817-9801